## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **CARLOS ALBERTO GARCIA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20CV00629 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **LT. JAMES BOWLES, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Carlos Alberto Garcia, Pro Se Plaintiff; Justin M. Lugar, Assistant United States Attorney, Roanoke, Virginia, for Defendants.*

The plaintiff, Carlos Alberto Garcia, a federal inmate proceeding pro se, filed this civil rights action under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  He sues federal prison officials for allegedly using excessive force against him in June 2018 in violation of his constitutional rights. After review of the record, I conclude that the defendants are entitled to summary judgment on the ground that Garcia did not timely file this lawsuit.

## I.  BACKGROUND.

Garcia has identified the following individuals as defendants: Lt. James Bowles, Lt. Lively, Officers Bates, J. Bledsoe, J. Hornsby and N. Stapleton, Nurse

Meade, and Active Captain and Active Warden.[1]   He makes the following allegations on which he bases his excessive force claims.

On June 26, 2018, while Garcia was confined at the United States Penitentiary Lee (USP Lee), his case manager wrote a 205 Code disciplinary charge against him for masturbating.  Shortly thereafter, officers removed him from his cell, handcuffed and restrained him, and placed him in a plastic wheelchair.  Lt. Bowles and other officers allegedly verbally harassed Garcia because of his recent 205 Code charge and his criminal history as a sex offender.

Ultimately, the officers moved Garcia to a holding cell, cut his clothes off his body, and dressed him in paper clothes, allegedly continuing their verbal harassment. Officer Bates allegedly "flicked" Garcia's penis and said, "I don't think you're going to be needing this anymore!"  Compl. 4, ECF No. 1.  Officer Bates allegedly "pulled up the 'paper underwear' along the crack of [Garcia's] anus . . . in a flossing motion," causing him "pain" while making derogatory sexual remarks.  *Id.*  The officers placed a safety helmet on Garcia's head and applied ambulatory restraints. Garcia alleges that they wrapped a metal chain around his stomach three times, tightly, making it difficult to breath and applied the "lock compartment" at the back before "violently re-directing [it] toward [his] front," causing him to scream in pain.

___

[1] It appears from the Proofs of Service that the defendants sued as "J. Bledsoe" and "J. Hornsby" are actually named "Nathanial Bledsoe" and "Lynn Hornsby," respectively. Proofs Serv. 2, ECF Nos. 57, 58.

*Id.* at 5.  The helmet slipped down over Garcia's eyes.  When he tried to use the wall as leverage to lift the helmet up, officers yelled, "Stop hitting your head!  He's trying to kill himself!"  *Id.*  Then, officers allegedly swarmed him and kicked, punched, and kneed his back, legs, head, and upper torso.  Other officers allegedly grabbed his neck and "smashed [his] face on the wall."  *Id.* at 5-6.

Officers moved Garcia back into the plastic wheelchair and took him to Cell 201, "the 4-point restraint cell."  *Id.* at 6.  Two officers stood him up, "lifted [him] above their heads and over their shoulders, and dropped [him] onto the mattressless, hard, concrete slab."  *Id.*  This procedure knocked the wind out of him.  Garcia alleges that the officers applied the four-point restraints to his wrists "in an illegal fashion" so that the restraints impaired his circulation and caused pain to his wrists and hands.  *Id.*  Then, the officers allegedly "began to physically abuse [Garcia] with hands, elbows, and feet" and continued their verbal comments about Garcia's sex offender status and crimes.  *Id.* at 7.

Garcia alleges that officers left him in four-point restraints for eighteen hours and that every two hours during that time, he "was beaten with fists, punches, kicks, elbows, and blows to the face with the safety shield."  *Id.* at 7.  He alleges that Officer Bates "punched [his] nose with his fist then tr[i]ed to break it by sliding the saf[et]y shield from the bottom of my nose toward the base of it."  *Id.* at 9.  Bates also allegedly used the shield's "sharp edges to slice and saw at [Garcia's] upper

torso/shoulder area," causing "permanent scar damage." *Id.* at 9–10. During the night shift, Lt. Lively allegedly forced Garcia to drink dirty toilet water twice and when he refused a third time, threw the water in his face. During the restraint period, Garcia allegedly defecated on himself once and urinated on himself three times, but officers left him to lie in his own waste for hours.

Officers released Garcia from four-point restraints about 9:00 a.m. on June 27, 2018. They then applied ambulatory restraints, allegedly in the same painful manner that they had used on the previous day, causing cuts to the left side of his stomach. While Garcia was in ambulatory restraints, Lt. J. Bowles allegedly said to him, "If you mention this, or even attempt to report this to anybody, we're going to mail you to your mother in a pine box!" *Id.* at 12. A captain allegedly said, "So be a good Dick Beater and keep your mouth shut. Otherwise you're going to find yourself in a dire, dire situation." *Id.*

Garcia filed this lawsuit in October 2020, while he was confined in a different federal prison facility. Defendants J. Bowles, Lively, Bates, J. Bledsoe, L. Hornsby. N. Stapleton, and Nurse Meade have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. Garcia responded to the motion, these defendants

filed a Reply with additional evidence in support, and Garcia also responded to that filing.  Thus, I find the defendants' motion ripe for consideration.[2]

## II.  DISCUSSION.

### A.  The Summary Judgment Standard.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  Fed. R. Civ. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To avoid summary judgment, Garcia must present sufficient evidence that could carry the burden of proof of his claims at trial.  *See id.* at 252.  He "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor.  *Id.* at 248.

The court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to

---

[2]  Garcia has conceded that all claims against defendants N. Stapleton and Nurse Meade should be "dismissed due to lack of evidence." *See* Resp. 4, ECF No. 85. Accordingly, I will dismiss all claims against these defendants.

[3]  The defendants' motion is titled as a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 71.  The court notified the parties that the motion could be considered either way.  Because the court must rely on the defendants' evidence outside the Complaint to resolve their statute of limitations defense, I will consider their motion as seeking summary judgment.

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).[4]   A pro se litigant's verified complaint and other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).  Where a pro se plaintiff fails to respond to a defendant's specific evidence contradicting the conclusory allegations of the complaint or other submissions, however, that defendant may be entitled to summary judgment.  *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992) ("[U]nsupported speculation is not sufficient to defeat a summary judgment motion.").

### B.  Statute of Limitations.

*Bivens* provides an implied remedy against federal officials for damages to remedy a constitutional violation.[5]  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017).  Because Congress did not set time limits for filing a *Bivens* action, such cases are uniformly governed by the statute of limitations applicable to general

---

[4]   I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

[5]   A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983, and therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions.  *Farmer v. Brennan*, 511 U.S. 825, 839–47 (1994).

personal injury cases in the state where the alleged violations occurred.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  In Virginia, that state statute of limitations grants claimants two years from the date of accrual to file a *Bivens* action.  See Va. Code Ann. § 8.01-243(A); *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983).  "A federal cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Baldwin v. City of Greensboro*, 714 F.3d 828, 839 (4th Cir. 2013).

Garcia complains about events that occurred on June 26 and 27, 2018.  He signed and dated the cover letter (mailed with his Complaint) on October 3, 2020, which I will consider as the date Garcia filed the Complaint.[6]  The defendants assert that because Garcia did not sign and date his Complaint within two years after the occurrences at issue in his lawsuit, I should dismiss the action as untimely filed under Va. Code Ann. § 8.01-243(A).

Garcia counters the defendants' argument by asserting that he could not have filed his *Bivens* action until he had exhausted available administrative remedies.  *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of available prison administrative

---

[6] An inmate's § 1983 action is commenced for purposes of the statute of limitations when he delivers his complaint to prison authorities for mailing.  *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-36 (4th Cir. 1991).  For purposes of this Opinion, I will assume that Garcia delivered his initial Complaint to prison authorities for mailing on the same day when he signed and dated his cover letter.

remedies before filing suit). He states that because two defendants threatened to harm him if he filed administrative remedies about the uses of force at USP Lee on June 26 and 27, 2018, he waited to do so until he reached his next designated federal facility, USP Coleman in Florida.

I do not take lightly the allegations that the defendants threatened Garcia with harm if he filed grievances. "[S]erious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make [an] administrative remedy unavailable" under § 1997e(a). *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008); *Fobbs v. Hunt*, No. 3:21CV26 (DJN), 2021 WL 1792087, at *5 (E.D. Va. May 5, 2021) (adopting *Turner* test and citing other circuits and other district courts in the Fourth Circuit that have applied *Turner* in threat cases). Under *Turner*, the plaintiff must show, subjectively, that "the threat actually did deter [him] from lodging a grievance" and, objectively, that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." 541 F.3d at 1085. If the inmate states facts making these showings, he can survive a motion seeking summary judgment based on his failure to exhaust as required under § 1997e(a). The defendants in this case do not argue failure to exhaust, however. Rather, they argue that Garcia failed to diligently pursue his rights and brought his *Bivens* action too late.

The parties do not dispute certain facts related to the statute of limitations defense.  Normally, the initial administrative remedy in the BOP grievance procedure must be filed within twenty days after the challenged occurrence.  Mem. Supp. Mot. Summ. J., Ex. 2, Spearen Decl. ¶ 6, ECF No. 72-2.  But when an inmate's grievance or appeal complains about BOP staff misconduct, it will be accepted and investigated even when it was not filed within twenty days.

After June 26 and 27, 2018, when the defendants allegedly used excessive force against Garcia, he remained in the Special Housing Unit at USP Lee for about three months.  *Id*. Ex. 1, Canfield Decl. ¶¶ 80, 84, 86, ECF No. 72-1.  On September 15, 2018, he was transferred to USP Atlanta.  On October 25, 2018, officials transferred Garcia to USP Coleman.

Prison officials recorded receipt of Garcia's first administrative remedy about the allegations in this lawsuit on April 8, 2019.  Spearen Decl. at ¶¶ 5, 18, 19.  After several delays about which the parties disagree, Garcia completed the required steps of the exhaustion process on June 29, 2020, when the BOP Central Office replied to his final grievance appeal.

The "clear rule" in this circuit when Garcia filed his *Bivens* action in 2020 was (and is still) that the statute of limitations can be tolled "during the grievance process."  *Battle v. Ledford*, 912 F.3d 708, 720 (4th Cir. 2019).  As with any equitable tolling, however, tolling for the exhaustion period applies only when the

prisoner shows "(1) that he ha[d] been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Fauconier v. Clarke*, 966 F.3d 265, 275 (4th Cir. 2020) (quoting *Battle*, 912 F.3d at 718) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

In *Battle*, the court of appeals applied equitable tolling because the plaintiff had met both of these tolling requirements.  The plaintiff had "showed reasonable diligence during the 83-day exhaustion period.  He promptly denied the disciplinary charge against him and then underwent two rounds of appeals, properly pursuing the process through to the last level." *Battle*, 912 F.3d at 718.  Yet, until he completed that process, the exhaustion requirement of § 1997e(a) posed "an extraordinary circumstance [that] stood in the way of filing suit." *Id.* at 719.  Based on both Battle's diligence during the exhaustion process and the exhaustion requirement's erosion of the statutory limitation period, the court of appeals held that Battle was entitled to tolling for the time required to exhaust. *Id*.  Specifically, the court found that the statutory period should be calculated as beginning at the point when Battle completed the exhaustion process under the applicable prison procedures. *Id.* at 720.

The defendants here argue that for lack of diligence, Garcia is not entitled to equitable tolling during exhaustion.  I must agree.

Unlike the plaintiff in the *Battle* case, Garcia has not demonstrated diligence in pursuing his available administrative remedies or his constitutional rights.  I will

assume without finding that based on the defendants' alleged verbal threats of retaliation, Garcia did not file any administrative remedy while at USP Lee.  Thus, I will not consider his time at USP Lee in assessing the diligence element of his equitable tolling argument.  After leaving USP Lee, however, Garcia failed to demonstrate diligence to properly lodge an initial remedy under the BOP procedure. He claims vaguely that filing remedy forms while in transit and without his personal property made this process difficult until after he was settled at USP Coleman.  I cannot find that such inconveniences meet the exacting standard for equitable tolling.  Garcia does not allege that his transit and property issues prevented him in any way from filing a grievance while confined at USP Atlanta about the alleged violations at USP Lee.

Garcia's delay in properly pursuing administrative remedies was not trivial. After he landed at USP Coleman in late October 2019, safely away from the purported threats of USP Lee officers, Garcia waited another six months to lodge a proper grievance about the events in this lawsuit.  I simply cannot find that this timing demonstrates the type of diligence in exhausting remedies that the court contemplated in *Battle*.  *Fauconier*, 966 F.3d at 275 (recognizing that tolling authorized in *Battle* applies "only when the prisoner shows . . . that he ha[d] been pursuing his rights diligently").

-11-

The exhaustion period in this case lasted over one year, from April 2019 to June 2020. The parties offer differing accounts of the reason for delays in the administrative appeals process. Because Garcia's lack of diligence is evident from other facts, I need not resolve these factual differences. Not only did Garcia delay initiation of the grievance procedure until April 2019, but he also delayed filing his lawsuit for more than three months after his exhaustion process was complete in late June 2020. This type of unexplained delay in pursuing his rights once he was eligible under § 1997e(a) to litigate them weighs against finding that Garcia is entitled to any sort of equitable tolling in this case. *Pace*, 544 U.S. at 418 (requiring litigant's due diligence to warrant equitable tolling).

Based on the record, I conclude that Garcia failed to file his *Bivens* action within the two-year statutory filing period. Furthermore, because he failed to diligently pursue his administrative remedies and his constitutional rights, he is not entitled to equitable tolling.

### III.  CONCLUSION.

For the reasons stated in this Opinion, it is **ORDERED** as follows:

1. All claims against defendants N. Stapleton and Nurse Meade, are DISMISSED at the request of the plaintiff;

2. The Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment, ECF No. 71, is GRANTED; and

3. All claims against defendants Active Captain and Active Warden, who

   have not been properly identified or served process in this case, are

   DISMISSED.

A separate Judgment will enter herewith.

ENTER:   September 6, 2022

/s/  JAMES P. JONES
Senior United States District Judge